Slip Op. 10-55

# UNITED STATES COURT OF INTERNATIONAL TRADE

BRIDGESTONE AMERICAS, INC., BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, and TITAN TIRE CORPORATION,

    Plaintiffs,

v.

UNITED STATES,

    Defendant,

and

XUZHOU XUGONG TYRES CO., LTD.

    Defendant-Intervenor.

Before: Jane A. Restani, Chief Judge

Consol. Court No. 08-00256

## OPINION

[Commerce's remand determination sustained.]

Dated: May 14, 2009

  King & Spalding, LLP (Joseph W. Dorn, Daniel L. Schneiderman, and J. Michael Taylor) for plaintiffs Bridgestone Americas, Inc. and Bridgestone Americas Tire Operations, LLC.

  Stewart and Stewart (Wesley K. Caine and Terence P. Stewart) and King & Spalding, LLP (Daniel L. Schneiderman) for plaintiff Titan Tire Corporation.

  Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael David Panzera, John J. Todor and Loren Misha Preheim); Daniel J. Calhoun, Irene H. Chen and David Richardson, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

White & Case, LLP (Adams C. Lee and Frank H. Morgan) for the defendant-intervenor.

Restani, Chief Judge: This matter is before the court for decision following objections by Defendant-Intervenor Xuzhou Xugong Tyres Co., Ltd. ("Xugong") to the Final Redetermination issued by the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department"). In 2008, Plaintiffs Bridgestone Americas, Inc., Bridgestone Americas Tire Operations, LLC, and Titan Tire Corporation (collectively, "Bridgestone"), domestic producers of certain off-the-road ("OTR") tires, contested Commerce's exclusion of Xugong, a Chinese producer of OTR tires, from the scope of a final antidumping ("AD") determination. See Certain New Pneumatic Off-The-Road-Tires from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Partial Affirmative Determination of Critical Circumstances, 73 Fed. Reg. 40,485, 40,488–89 (Dep't Commerce July 15, 2008) ("Final Determination"). Specifically, Plaintiffs contested Commerce's determination that fifteen of the raw material inputs Xugong used in producing the tires were indirect materials.

In August 2009, the court remanded the Final Determination to Commerce to "reconsider whether each of the fifteen inputs was a direct or indirect material, to reopen the record as appropriate, and to recalculate the dumping margin accordingly." Bridgestone Americas, Inc. v. United States, 636 F. Supp. 2d 1347, 1357 (CIT 2009) ("Bridgestone I"). On remand, Commerce adjusted the antidumping duty rate upward from 0.00 percent to 10.01 percent. Final Redetermination Pursuant to Court Remand (Dep't Commerce Jan. 8, 2010)

(Docket No. 88) ("Final Redetermination").[1] Following remand, Xugong asserts that Commerce's redetermination with respect to one of fifteen manufacturing inputs, "HO Oil," cannot be sustained. (Defendant-Intervenor Xuzhou Xugong Tyres Co., LTD.'s Objections to the Department of Commerce's January 8 Remand Determination, at 5, 13 (Docket No. 94) ("Xugong Objection").) The court will enter judgment affirming Commerce's redetermination.

## BACKGROUND

In July 2007, Commerce initiated an antidumping ("AD") investigation to determine whether imports of certain pneumatic OTR tires from the People's Republic of China for the period of 1 October 2006 through 31 March 2007, were being sold in the United States at less than fair value. See Initiation of Antidumping Duty Investigation: Certain New Pneumatic Off-the-Road Tires From the People's Republic of China, 72 Fed. Reg. 43,591, 43,592 (Dep't Commerce Aug. 6, 2007). Commerce selected Xugong as a mandatory respondent. Certain New Pneumatic Off-The-Road Tires From the People's Republic of China; Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination, 73 Fed. Reg. 9278, 9282–83 (Dep't Commerce Feb. 20, 2008) ("Preliminary Determination").[2] In

---

[1] For a complete discussion of background information, the reader is referred to this Court's August 2009 opinion ordering remand. Bridgestone I, 636 F. Supp. 2d at 1347.

[2] The other mandatory respondents were Guizhou Tyre Co., Ltd., Hebei Starbright Co., Ltd., and Tianjin United Tire & Rubber International Co., Ltd. Id. at 9278 n.3, 9283. Those respondents were also mandatory respondents in an accompanying countervailing duty ("CVD") investigation. See Certain New Pneumatic Off-the-Road Tires From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Negative Determination of Critical Circumstances, 73 Fed. Reg. 40,480, 40,483 (Dep't Commerce July 15, 2008). Currently pending before the court is Commerce's AD and CVD remand determinations as they relate to those separate respondents. See GPX Int'l Tire Corp. v. United States, 645 F. Supp. 2d
(continued...)

Consol. Court No. 08-00256                                                                Page 4

the Preliminary Determination, Commerce calculated a dumping margin of 51.81% for Xugong. Id. at 9291.

After the Preliminary Determination, Commerce issued Xugong a supplemental questionnaire requesting clarifying information and an updated factors of production database for the purpose of calculating normal value to compare with the United States price. (See Xugong's Fifth Supplemental Questionnaire Response ("Fifth Supplemental Questionnaire"), Exs. Accompanying the Pl.'s Br. of Bridgestone, Tab 3 (Docket No. 107) ("Pl.'s App.").) In addition to providing the requested information, Xugong informed Commerce that fifteen of the raw material inputs it previously reported as direct materials were in fact indirect materials and included the corrections in the updated database. (Id.) Although Commerce treated the fifteen inputs as direct materials in calculating the preliminary dumping margin, Commerce treated them as indirect materials in its Final Determination and calculated a zero dumping margin for Xugong. Final Determination, 73 Fed. Reg. at 40,488–89.

Bridgestone challenged Commerce's zero dumping margin and the court remanded this matter to the Department to "reconsider whether each of the fifteen inputs was direct or indirect material." Bridgestone I, 636 F. Supp. 2d at 1357. In response, Commerce reopened the administrative record and issued a Supplemental Questionnaire. (See Pl.'s App. Tab 7.) Xugong asserts that in the course of preparing the response it determined that the raw material it "referred to as HO Oil was, in fact, aromatic oil." (Xugong Objection 5.) Xugong submitted the alleged translation error correction in its Supplemental Questionnaire Response

---

²(...continued)
1231 (CIT 2009).

and postulates that aromatic oil should be valued under HTS Heading 2707.50 as opposed to its suggested HTS Heading 2902.90.90 for HO Oil. (See Xugong Objection 13; Def.'s Resp. to Def.-Intervenor's Objections to the Dep't of Commerce's Remand Redetermination, 11 (Docket No. 99) ("Def.'s Resp.").) Throughout its objection Xugong focuses on the input labeled HO Oil, and considers the other fourteen inputs "irrelevant," because if Commerce treats HO Oil as an indirect material or values it under the now-claimed HTS Heading 2707.50, Xugong's dumping margin would be de minimis. (Id.) Accordingly, Xugong objects to Commerce's Final Redetermination.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will uphold Commerce's final results of redetermination pursuant to the court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

I. **Commerce Applied An Appropriate Standard to Determine Whether An Input Was A Direct Or Indirect Material**

As a preliminary matter, Xugong submits that Commerce acted unlawfully when it relied on a "new and previously unarticulated standard in the remand determination for defining direct and indirect materials." (Xugong Objection 13.) Xugong relies on Commerce's articulation of a standard it its Issues and Decision Memorandum for the Antidumping Investigation of Certain New Pneumatic Off-the-Road Tires from the People's Republic of China, A-570-912, POR: 10/1/2006–3/31/2007, at 88–90 (July 7, 2008) ("I&D Memo"), Admin.

Consol. Court No. 08-00256                                                                                              Page 6

R. Pub. Doc. 648, available at http://ia.ita.doc.gov/frn/summary/PRC/E8-16156-1.pdf (last visited May 14, 2010). In the I&D Memo, Commerce stated that

> [i]n determining whether a given material should be treated as a part of factory overhead versus a direct material for purposes of calculating [normal value], the Department takes into consideration: 1) whether the material is physically incorporated into the final product; 2) the material's contribution to the production process and finished product; 3) the relative cost of the input; and 4) the way the cost of the input is typically treated in the industry.

I&D Memo at 88–89. Xugong argues that Commerce improperly focused on only the first two of the four criteria—the physical incorporation of the input and its significance to the production process. See Final Redetermination at 3–5. Xugong further argues that if Commerce is going to rely solely on the first two criteria, the input is direct only if the "subject merchandise could not be produced without using [the input]." (Xugong Objection 14–15.)

      Although Xugong is correct that the Department's language in its I&D Memo appears to refer to a hard-and-fast four-prong standard, it appears that such a characterization is not appropriate. This "standard" is merely a survey of various criteria taken into consideration in different past determinations to distinguish direct materials. See I&D Memo at 89. Indeed, Commerce acknowledged that in prior proceedings, for this and other antidumping cases, the Department evaluated other criteria. Final Redetermination at 4. Commerce explained its decision, however, to focus on the first two criteria. (Id. at 5.) Specifically, the criterion of "the way the cost of the input is typically treated in the industry," I&D Memo at 89, was not assessed by Commerce because there was insufficient evidence to discern Indian surrogate producers'

treatment of the inputs.[3] <u>Final Redetermination</u> at 4–5. Thus, the criterion did not provide a useful manner to determine whether the input was direct and therefore, Commerce did not rely upon it. Accordingly, the court finds that in focusing on the first two criteria, Commerce did not abuse its discretion to rely on various criteria to value factors of production. See <u>Nation Ford Chem. Co. v. United States</u>, 166 F.3d 1373, 1377 (Fed. Cir. 1999).

  Further, although Commerce has found, as Xugong contends, a material to be direct if the subject merchandise could not be produced without using the input, <u>see e.g.</u>, <u>Issues and Decision Memorandum for the Less-Than-Fair-Value Investigation of Wooden Bedroom Furniture from the People's Republic of China</u>, A-570-890, at 118–19 (Nov. 8, 2004), <u>available at</u> http://ia.ita.doc.gov/frn/summary/prc/04-25507-1.pdf (last visited May 13, 2010), Commerce has also found a material to be direct when "the chemicals are physically incorporated into, and become part of, the finished product," <u>Notice of Final Determination of Sales at Less Than Fair Value: Certain Paper Clips from the People's Republic of China</u>, 59 Fed. Reg. 51,168, 51,174 (Dep't Commerce Oct. 7, 1994). Xugong's Supplemental Questionnaire describes HO Oil as an input that is "added in [the] milling process, for the purposes of softening rubber and improving its processing technical function." (Pl.'s App. Tab 7.) In ordinary parlance this description characterizes an input that is physically incorporated into the finished product. Accordingly, Commerce's determination that HO Oil is a direct input is supported by substantial evidence and

---

  [3] The Department has noted previously that under Indian accounting practices, factory overhead materials assist the manufacturing process, but do not enter physically into the composition of the finished product. <u>I&D Memo</u> at 90. In this case, the Indian surrogate financial statements did not provide enough detail to determine whether the inputs were treated as overhead materials. <u>Final Redetermination</u> at 4.

Consol. Court No. 08-00256                                                                                      Page 8

in accordance with law.

**II.    Xugong Did Not Exhaust Its Administrative Remedies As To Valuation Of The Key Input**

The exhaustion doctrine provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." McKart v. United States, 395 U.S. 185, 193 (1969) (internal quotation marks and citation omitted). "In the Court of International Trade, a [party] must . . . show that it exhausted its administrative remedies, or that it qualifies for an exception to the exhaustion doctrine." Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir. 2003) (citing 28 U.S.C. § 2637(d)).[4] This doctrine reflects a respect for judicial economy and the agency's administrative autonomy. See McKart, 395 U.S. at 194–95 ("other justifications for requiring exhaustion . . . [include] very practical notions of judicial efficiency . . . ."); Unemployment Comp. Comm'n of Ala. v. Aragon, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it . . . deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.").

Xugong was selected as a mandatory respondent and officially notified of that fact in February 2008. Preliminary Determination, 73 Fed. Reg. at 9282–83. In its Preliminary Determination, the Department valued HO Oil as a direct input using Xugong's suggested HTS

---

[4] Exceptions to the exhaustion doctrine may include: (1) raising a pure question of law that neither creates undue delay nor causes expenditure of scarce party time and resources, Thai I-Mei Frozen Foods Co. v. United States, 477 F. Supp. 2d 1332, 1354–55 (CIT 2007); (2) "judicial interpretations of existing law after decision below and pending appeal—interpretations which if applied might have materially altered the result," Hormel v. Helvering, 312 U.S. 552, 558–59 (1941); and (3) raising the issue before the agency would have been futile, Gerber Food (Yunnan) Co. v. United States, 601 F. Supp. 2d 1370, 1380–81 (CIT 2009).

Heading 2902.90.90 and calculated a dumping margin of 51.81% for Xugong. Id. at 9291; Final Redetermination at 20. Between February 2008 and the Final Determination issued in July 2008, Xugong responded to Commerce's Fifth Supplemental Questionnaire and submitted its case brief. (See Pl.'s App. Tab 3–4.) In its response to the Fifth Supplemental Questionnaire Xugong stated that "we hereby claim [the fifteen inputs] as indirect raw materials . . . ." (Pl.'s App. Tab 3.) Normally, indirect materials are part of overhead and thus would not be valued as a separate item. Shortly after submitting the Fifth Supplemental Questionnaire, Xugong submitted a similar classification correction to the one at issue here, of the material "pine oil," which it claimed was originally improperly translated as "wood tar." (Xugong Objection 7.) In its May 2008 case brief, Xugong did not mention its new characterization of the fifteen inputs as indirect materials, but it did submit the classification correction for "pine oil." (Pl.'s App. Tab 4.) Commerce accepted the correction as timely and revised the HTS classification and corresponding surrogate value of "pine oil" in its Final Determination. See I&D Memo at 130–31.

Xugong, in its case brief, also did not challenge Commerce's use of HTS Heading 2902.90.90 for HO Oil (then a direct material) in the Preliminary Determination and instead, made its new claim here for the first time after the Final Redetermination. Under the Department's regulations, Xugong had an obligation to make any argument that might be relevant. See 19 C.F.R. § 351.309(c)(2) (requiring briefs to "present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results"); see also Dorbest Ltd. v. United States, Appeal No. 2009-1257, -1266 (Fed. Cir. May 14, 2010); GPX Intern. Tire Corp., 645 F. Supp. 2d at 1250; Gerber Food, 601 F. Supp. 2d at 1379. Xugong's

Consol. Court No. 08-00256                                                                    Page 10

response to the Fifth Supplemental Questionnaire demonstrates its awareness that the direct versus indirect status of the fifteen inputs was at issue in the investigation. There does not seem to be any adequate reason for Xugong to rely on an expectation that Commerce would simply accept its characterization that HO Oil was an indirect material and reverse its <u>Preliminary Determination</u> decision. Xugong is correct that parties need not always raise issues before the administrative agency that become important because of later developments, such as reversal as to the prevailing party, see e.g., <u>Qingdao Taifa Group Co. v. United States</u>, 637 F. Supp. 2d 1231, 1236–37 (CIT 2009); however, the facts here do not lead to this exception. The appropriate time for Xugong to have asserted the classification correction for HO Oil was in its case brief before the <u>Final Determination</u>—as required by the Commerce's regulations and as Xugong did for "pine oil." See <u>China First Pencil Co. v. United States</u>, 427 F. Supp. 2d 1236, 1243 (CIT 2006) (finding a failure to exhaust administrative remedies when the plaintiff did not "challenge Commerce's decision . . . during the administrative comment period following publication of the Preliminary Results and instead chose to challenge the issue on appeal"); <u>IPSCO, Inc. v. United States</u>, 749 F. Supp. 1147, 1150 (CIT 1990), <u>aff'd in relevant part</u>, 965 F.2d 1056, 1061–62 (Fed. Cir. 1992) ("Judicial economy, fairness to the parties and the need to fulfill Congress's intent . . . requires that errors . . . be raised from the outset . . . . Unless a thorough examination of the record is made prior to briefing, the court and the parties risk becoming involved in unnecessary litigation of unimportant issues."). Commerce might have chosen to evaluate the classification correction for HO Oil upon remand, but it was under no regulatory obligation to do so. See <u>Nokornthai Strip Mill Public Co. v. United States</u>, 587 F. Supp. 2d 1303, 1312 (CIT 2008) ("Commerce acted within its discretion, and in compliance with

Consol. Court No. 08-00256                                                                                                Page 11

the agency's own regulations, to limit its remand consideration to the timely-submitted arguments and evidence.").[5] Commerce complied with the law by giving Xugong every opportunity to present its argument at the appropriate administrative level. Xugong does not argue that the circumstances warrant applying an exception to the exhaustion doctrine, nor are any appropriate.

Although the court has discretion to remand an issue to the agency despite non-exhaustion of remedies, see 28 U.S.C. § 2637(d) (court shall require exhaustion "where appropriate"), the "Supreme Court has cautioned that a remand requires a showing that the failure to raise an issue was not the result of a lack of due diligence on the part of the claimant," Bethlehem Steel Corp. v. United States, 27 F. Supp. 2d 201, 206 (CIT 1998) (citations omitted); see also Peer Bearing Co. v. United States, 57 F. Supp. 2d 1200, 1205 (CIT 1999) (finding that a failure to carefully review preliminary results "is no excuse for [a party's] failure to discover and raise the possibility of error as early in the administrative process as possible and thereby to exhaust its administrative remedies, as required under 28 U.S.C. § 2637(d)"). As indicated, Xugong knew that the valuation of HO Oil was important after Commerce issued the Preliminary Determination because the input was declared a direct material. Further, if, as Xugong submits, the classification of HO Oil means the difference between a dumping margin of 10.01% or a de minimis dumping margin, it seems reasonable to expect that Xugong would have

---

[5] The court does not opine on whether consideration of this issue was within the scope of the court's remand order. Certainly, if Xugong had raised the classification issue the first time this matter was before the court, the court would have addressed this matter before it was remanded. Other classification issues were within the scope of remand. See Bridgestone I, 636 F. Supp. 2d at 1357. Xugong's untimely actions needlessly complicate the proceedings.

Consol. Court No. 08-00256                                                                             Page 12

reviewed its submission and detected the alleged translation error before the <u>Final Determination</u>. Accommodating Xugong's delay now would prolong this matter and require an additional remand, which the court declines to order.[6]

### III. Commerce Did Not Exhibit Bias In Favor of the Domestic Industry

Xugong claims that Commerce exhibited bias in favor of the domestic industry's position regarding the valuation of HO Oil during the remand proceeding because the Department: (1) held an <u>ex parte</u> meeting with petitioners; (2) provided insufficient time for Xugong to respond to the supplemental questionnaire; and (3) failed to conduct verification. (Xugong Objection 2–5.) Such favoritism, Xugong contends, is contrary to the general principle that Commerce must conduct investigations in an impartial manner. (<u>Id.</u>) "The right to an impartial decision maker is unquestionably an aspect of procedural due process." <u>NEC Corp. v. United States</u>, 151 F.3d 1361, 1371 (Fed. Cir. 1998); <u>see</u> <u>FAG Italia S.p.A. v. United States</u>, 110 F. Supp. 2d 1055, 1061 (CIT 2000). Allegations of favoritism, however, that are merely speculative or unsubstantiated are insufficient. <u>Spezzaferro v. Fed. Aviation Admin.</u>, 807 F.2d 169, 173 (Fed. Cir. 1986).

First, Commerce is permitted to conduct <u>ex parte</u> meetings pursuant to 19 U.S.C. § 1677f(a)(3), provided that a record of them is maintained and made available. 19 U.S.C.

---

[6] Because Xugong did not properly exhaust its administrative and judicial remedies we will not reach the merits of Xugong's claim that Commerce erred when it concluded that Xugong failed to provide sufficient support for Commerce to conclude that the HTS Heading 2902.90.90 was an inappropriate source for valuing HO Oil. Commerce maintains that Xugong did not provide specific descriptive information from which the Department could conclude that HTS Heading 2707.50 was more appropriate. In all likelihood, further fact-gathering would be necessary to resolve this. This factor further supports denial of consideration of this issue.

Consol. Court No. 08-00256                                                                                   Page 13

§ 1677f(a)(3). Xugong does not allege any procedural irregularities with respect to Commerce's obligations under § 1677f(a)(3) and admits that it was informed of the meeting after it took place. (Xugong Objection 3.) Xugong does not dispute Defendant's assertion that it was afforded the same opportunity and declined to meet with Commerce during the remand proceeding. (Def.'s Resp. 18.) Even if Commerce's meeting with Bridgestone were a procedural irregularity, Xugong must demonstrate material prejudice. See Gilmore Steel Corp. v. United States, 585 F. Supp. 670, 679 (CIT 1984). Xugong has neither alleged nor demonstrated prejudice. Accordingly, Xugong's ex parte argument is unavailing.

Second, Xugong argues that Commerce failed to act impartially because it delayed in issuing the Supplemental Questionnaire and provided insufficient time for Xugong to respond. (Xugong Objection 3–4.) Xugong was initially given eleven days (eight business days) to respond; however, Xugong was granted an extension and ultimately allowed 26 days (20 business days) to respond. (Id.) This is roughly equivalent to, if not greater than, the amount of time Commerce took to issue the questionnaire. (Id.) Xugong does not identify how it was prejudiced by the perceived delay in Commerce's notification that it was reopening the record and issuing a supplemental questionnaire. See Boynton v. United States, 536 F. Supp. 2d 1344, 1346 (CIT 2008) (finding no merit in the due process claim, in part, because Plaintiff did not demonstrate prejudice). Further, the fact that Xugong's extension was granted vitiates any potential prejudice Xugong may have suffered had it been required to abide by the initial deadline. Accordingly, Xugong's claim that Commerce's timing of the remand is evidence of bias is similarly unavailing.

Lastly, Xugong contends that Commerce's cancellation of verification on the

same day that Xugong submitted its Supplemental Questionnaire Response further demonstrates favoritism toward the domestic industry's position. (Xugong Objection 4–5.) It is well established, however, that agencies enjoy broad discretion in allocating their investigative resources. Torrington Co. v. United States, 68 F.3d 1347, 1351 (Fed. Cir. 1995); see Carpenter Tech. Corp. v. United States, 662 F. Supp. 2d 1337, 1346 (CIT 2009) ("[T]he Department[] [has] discretion to decide whether and how to verify the information submitted during an antidumping proceeding."). Here, Commerce determined that it had all the information it needed via the submissions of the party. (Def.'s Resp. 20.) The spot check of verification would not change that. Thus, Commerce's invocation of its discretion not to conduct a verification does not demonstrate bias.

In sum, Xugong's allegations of favoritism are unavailing. Commerce is permitted to conduct ex parte meetings, allocate time reasonably in response to remand instructions, and decline to conduct verifications. Accordingly, its choice to do all three does not amount to a lack of impartiality in violation of procedural due process.

## CONCLUSION

The results of the remand determination are sustained in their entirety.

/S/     Jane A. Restani
Chief Judge

Dated: This 14th day of May, 2010.
New York, New York.

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BRIDGESTONE AMERICAS, INC., BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, and TITAN TIRE CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> XUZHOU XUGONG TYRES CO., LTD. <br><br> Defendant-Intervenor. | Before: Jane A. Restani, Chief Judge <br><br> Consol. Court No. 08-00256 |

## JUDGMENT

This case having been submitted for decision and the court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED that the Remand Determination of the Department of Commerce is sustained.

/S/    Jane A. Restani
Chief Judge

Dated: This 14th day of May, 2010.
       New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: May 14, 2010           By: /S/ Geoffrey Goell
                                 Deputy Clerk